UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM E. POWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNAL REVENUE SERVICE,<br><br>    Defendant. | Civil Action No. 18-453 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff William E. Powell seeks additional information from the Internal Revenue Service concerning his grandfather, father, a printing business once owned by his family, and himself. In the winter of 2017 and the spring of 2018, Powell claims to have submitted several requests to the IRS under the Freedom of Information Act and the Privacy Act. He then brought this action alleging that he got little response. Defendant now moves for summary judgment, arguing that it did not receive most of the requests, that it performed an adequate search for the request that did arrive, and that Powell has failed to exhaust the required administrative remedies before attempting to open the courthouse doors. Agreeing, the Court will grant the Motion.

**I.    Background**

Plaintiff continues his efforts to uncover information held by the IRS regarding asset distribution following the death of his father, William A. Powell, in 1992. See Powell v. Internal Revenue Serv., 280 F. Supp. 3d 155, 157 (D.D.C. 2017). He believes that financial records possessed by the Service may reveal evidence of impropriety in the dealings of trustees charged with administering his father's estate. See ECF No. 8 (Amend. Compl.), Exh. A (Dec. 11, 2017,

1

Request) at 7. Powell is no stranger to the process of requesting information from agencies on this matter. Indeed, he has already brought multiple suits in both this Court and the Eastern District of Michigan, all requesting various records involving his family's business. See, e.g., Powell, 280 F. Supp. 3d at 155; Powell v. Internal Revenue Serv., 2016 WL 7473446, at *1 (E.D. Mich. Dec. 29, 2016).

This time around, Plaintiff claims to have requested a variety of tax records from the IRS under FOIA, 5 U.S.C. § 522(a), and the Privacy Act, 5 U.S.C. § 552a. Despite his efforts, he alleges that the Service has "not responded or sent any correspondence" to answer each request. See Amend. Compl. at 3. Powell then filed this suit on April 3, 2018. His Complaint alleges that Defendant failed to respond to the December 11, 2017, FOIA and Privacy Act requests; the February 20, 2018, FOIA and Privacy Act requests; one March 5, 2018, Privacy Act and two Return and Income Verification Services (RAIVS) requests; and a March 7, 2018, Privacy Act request. Id. at 3–4 & Exh. C.

The IRS disagrees. It claims to have received only one Privacy Act request and to have no record of the other requests in its document-review system. See ECF No. 21 (Def. MSJ), Attach. 2 (Def. SUMF), ¶ 26. Additionally, it explains that it responded to that sole request by having an analyst, William White, search for records in Defendant's master database and mail five pages of these records to Powell. Id., ¶¶ 38–39. Believing its job accomplished in accordance with FOIA's requirements, Defendant moves for summary judgment.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation.

2

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In such cases, the agency bears the ultimate burden of proof to show that it conducted an adequate search. See Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). To determine whether a search "us[ed] methods which can be reasonably expected to produce the information requested," a court may rely upon an agency's "affidavits or declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search." Brown v. FBI, 675 F. Supp. 2d 122, 125 (D.D.C. 2009) (quoting Oglesby v. Dep't of the Army, 920 F.3d 57, 68 (D.C. Cir. 1990)) (internal quotations omitted). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

**III.     Analysis**

Defendant asks the Court to grant summary judgment both for the requests that it claims not to have received and for the one to which it responded. First, the Service argues that because it has "no record of having received" the December 11, the February 20, two of the three March 5, and the March 7 requests, Plaintiff "has failed to exhaust his administrative remedies" for these requests. See Def. MSJ at 5. Second, Defendant contends that it "performed an adequate search for the records sought in the March 5 request" that it did receive. Id. at 7. The Court addresses each argument in turn.

   A.  Receipt of Records Requests

The parties' disagreement hinges on a narrow issue: whether the IRS received the December 11, February 20, March 5 (RAIVS), and March 7 requests for tax documents. In a nutshell, Powell says he mailed or faxed all of them, and the Service says they never arrived. Plaintiff has filed exhibits displaying each request that he purported to send. See Amend. Compl., Exhs. A–D. The first set, a FOIA request and a Privacy Act request dated December 11, 2017, is addressed to Defendant's "Disclosure Scanning Operation" office in Atlanta. Id., Exh. A. Plaintiff has supplemented his proof with a declaration from his personal assistant, Adrienne Wright-Lawrence, indicating that she mailed the FOIA request to the IRS "Central Processing Unit" at the same address. See ECF No. 22 (Plaintiff's Opposition), Attach. 1 (Declaration of Adrienne Wright-Lawrence) at 1. She does not claim to have sent any other requests. A second letter, dated February 20, 2018, included an additional FOIA and Privacy Act request to the same mailing address. See Amend. Compl., Exh. B. Plaintiff also alleges that he faxed several requests: two RAIVS requests to the IRS "RAIVES [*sic*] TEAM" on March 5, 2018, and one Privacy Act request to the "Cincinnati Submission Processing Center" on March 7, 2018. Id.,

Exhs. C–D.  Finally, Powell faxed a separate Privacy Act request to the fax number of the IRS Central Processing Unit Atlanta office on March 5, 2018, that the Service acknowledges receiving.  Id., Exh. D.

Defendant rejoins that the evidence provided by Powell is insufficient because he must prove not "that the requester sent a request [but] that the agency received the request."  ECF No. 27 (Def. Reply) at 6.  On that point, the IRS has submitted a declaration from its analyst, William J. White, describing the procedures used to search for Powell's requests in the Automated Freedom of Information Act (AFOIA) database.  See Def. MSJ, Attach. 9 (Declaration of William J. White), ¶ 10.  According to White, "AFOIA captures scanned images and data for all Disclosure Office casework" — including FOIA and Privacy Act requests — and "is searchable by the requestor's name."  Id., ¶¶ 11, 13.  When White conducted a search for the name "William Powell," he found many of Plaintiff's past requests, but "among the requests described in (or attached to) the Amended Complaint, AFOIA only had a record of the March 5 Privacy Act Request."  Id., ¶¶ 14–15.  Finding no record of the other requests in its central database, Defendant argues that Plaintiff has failed to demonstrate that the IRS received each package.

Defendant's position prevails here.  In FOIA cases, "courts typically grant summary judgment by relying on sworn agency affidavits that are sufficiently convincing."  Reynolds v. Dep't of Justice, 2017 WL 1495932, at *2 (D.D.C. Apr. 26, 2017).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims."  Safecard Servs., 926 F.2d at 1200 (internal quotation marks and citation omitted).  When the receipt of a FOIA request is disputed, agency affidavits that "[explain] . . . the intake procedures used . . . for FOIA requests" and the efforts made to locate a specific request meet the presumption of the good-faith standard.  See Freedom Watch v. Bureau of Land Mgmt., 220 F.

5

Supp. 3d 65, 70 (D.D.C. 2016). Here, the IRS has met its evidentiary burden by detailing its AFOIA database and showing that, while many of Powell's requests were listed, most of his current ones were not.

Powell's response that he followed the appropriate procedure in submitting requests to the IRS is unavailing. He is correct that the IRS instructions for FOIA requests "do[] not require any requester to mail a request by Certified Mail or provide proof of mailing a request to Defendant." Pl. Opp. at 2. These instructions, however, are not designed to address situations where a plaintiff has claimed to have mailed a request that the agency has not received. In those circumstances, courts have required plaintiffs seeking to rebut the agency's affidavits to offer something more than a declaration of having sent the request. See, e.g., West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (holding plaintiff's allegation that he mailed a letter to agency insufficient when agency's search "could not find a record of any correspondence"). Plaintiff's attempt to bolster his case with the Wright-Lawrence Declaration fails for the same reason: Powell must rebut the IRS with evidence that it <u>received</u> his requests. Cf. Shoenman v. FBI, 2006 WL 1582253, at *12 (D.D.C. June 5, 2006) ("Without a copy of a stamped envelope showing the mailing . . . or a returned receipt certifying the actual request by the agency, Plaintiff cannot establish an essential element of the statutory requirements under FOIA requiring an agency's actual receipt.").

Although Plaintiff also provides fax confirmation pages for his March 5 RAIVS and March 7 Privacy Act requests, there are several explanations for the disconnect between the parties on the receipt issue for these requests. The March 7 Privacy Act request was faxed to the "Cincinnati Submission Processing Center" at a different number from the Atlanta Centralized Processing Unit, indicating that he did not follow the required procedure for these requests. See

6

Amend. Compl., Exh. D. When a requester fails to submit a FOIA request to an office specified by agency regulations, "[t]he failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust." West, 448 F. Supp. 2d at 211.

As for the RAIVS request, the IRS explains that it would not appear in the AFOIA database because it was sent to the RAIVS office, and not the disclosure office. See Def. Reply at 5 n.3. If this is what occurred, summary judgment would still be appropriate in this case. This is because Plaintiff has been sent prior correspondence, including a letter in the record dated December 17, 2017, informing him of the correct way to submit RAIVS requests. See Def. MSJ, Attach. 12 at 2 (detailing FOIA procedure to follow if "you are not satisfied with your response from the IRS" regarding RAIVS request). Powell provides no evidence that he followed that procedure here, which requires him to file a FOIA request before commencing this action. See Def. Reply at 5 n.3. ("Mr. Powell has failed to exhaust his administrative remedies as to any RAIVS request that he failed to subsequently submit to the FOIA Disclosure Office."). "Federal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records" in response to a FOIA request, so Plaintiff cannot bring this action if he failed to make a proper FOIA or Privacy Act request in the first place. Banks v. Dep't of Justice, 538 F. Supp. 2d 228, 234 (D.D.C. 2008).

Because Powell has not rebutted Defendant's evidence that it did not receive the requests in question, the IRS is entitled to summary judgment on those specific ones. "Without any showing that the agency received the [FOIA] request, the agency has no obligation to respond to it." Hutchins v. Dep't of Justice, 2005 WL 1334941, at *2 (D.D.C. June 6, 2005); see also Banks, 538 F. Supp. 2d at 234 (finding plaintiff had failed to exhaust before filing suit because "[i]t cannot be said that an agency improperly held records if the agency did not receive a request

for those records"). The IRS is therefore entitled to summary judgment on the December 11, February 20, March 5 (RAIVS), and March 7 claims.

B. Adequacy of Search

The Service next maintains that its search for the March 5 Privacy Act request that it did receive was sufficient. The Court agrees. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg, 23 F.3d at 551. The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id.

To establish the sufficiency of its search here, the IRS again relies on William White's declaration. In his March 5 Privacy Act request, Plaintiff sought Master File entity data resulting from a Command Code INOLE search with all definers, the Individual Master File (IMF) for Plaintiff for the years 1987 through 2017, and the Business Master File (BMF) records for the Powell Printing Co. for the years of 1989 through 1994. See Def. MSJ, Exh. 4 (March 5, 2018, Privacy Act Request). White averred that he executed a broad search of the IRS's Information Data Retrieval System, using the command code INOLE, with all possible definers, as requested by Powell. See White Decl., ¶¶ 18, 22. An INOLE search is designed to display the Master File

for a specific Taxpayer Identification Number — in this case Plaintiff's social-security number. Id., ¶¶ 20, 21. The search produced five responsive documents, which White released to Plaintiff as attachments to a letter dated March 29, 2018. Id., ¶¶ 22–23. White stated that he knew of no other way to find records using the INOLE Command Code.

The March 5 Privacy Act request also asked for IMF and BMF records. Id., ¶ 24. As Powell knows, the routine for requesting these types of records is to submit a form to RAIVS. As discussed, in response to a request unrelated to this litigation, the Disclosure Office sent Powell a letter dated December 19, 2017, outlining these very procedures. Id., ¶¶ 25–26. White reiterated the instruction and reattached the letter of December 19 to his March 29 response to Powell. Id., ¶¶ 27–28. White included his contact information, instructing Powell to reach out if there were any questions. Id., ¶ 31.

Given these extensive efforts, the Court believes that the IRS has cleared the bar for an adequate search on the March 5 Privacy Act request. White searched the most expansive database available under the most expansive terms. The Service relayed the responsive documents to Powell and redirected him to the appropriate department for the documentation it did not provide. Plaintiff, moreover, has not challenged the adequacy of this search. He instead argues that the IRS failed to conduct an adequate search in response to his other requests. The Court has already treated that topic, explaining that actual receipt of a request must precede a search. See Freedom Watch, 220 F. Supp. 3d at 69 ("[T]he receipt of a request by the agency is the legally significant event that triggers the commencement of the FOIA request.").

The IRS further contends that if Powell did not like the result of the search conducted, he should have administratively appealed. Plaintiff counters that he never received the letter

9

informing him of the result. The Court need not wade into yet another mail-delivery dispute, as Defendant's search was adequate as a matter of law.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 3, 2019